```
                UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


RALPH W. MCCLAIN, JR.,         :    CIVIL NO. 1:10-CV-00035
                               :
          Plaintiff            :    (Judge Caldwell)
                               :
     v.                        :    (Magistrate Judge Smyser)
                               :
DR. KALE, et al.,              :
                               :
          Defendants           :
```

## REPORT AND RECOMMENDATION

I. Background and Procedural History.

The plaintiff, a prisoner proceeding *pro se*, commenced this 42 U.S.C. § 1983 action by filing a complaint on January 7, 2010.

The complaint names Dr. Kale, a psychiatrist, as a defendant as well as the following officers and officials at the State Correctional Institution at Dallas: Lieutenant Bleich, Sergeant Musial; Captain Does 1-4; Nurse Doe 1; Corrections Officer Bath; Corrections Officer Wilkes[1];

---

1. The plaintiff identified this defendant as J.A. Wilk. The
(continued...)

Corrections Officer Rathburn[2]; Corrections Officer Corbett, Nurse Doe 2; Superintendent Klopotoski and Grievance Coordinator Lucas.

The plaintiff alleges the following in his complaint.

Defendant Kale ordered the nursing and correctional staff to inject the plaintiff with psychotropic drugs against his will and without a court order. Defendants Nurses Doe 1 and 2 injected the plaintiff with psychotropic drugs against his wishes on May 7th and May 8th of 2009.[3]

Despite having the plaintiff restrained several times, having the plaintiff injected with psychotropic drugs and stating that the plaintiff is a danger to himself, defendant

---

1. (...continued)
defendant, however, indicates that his name is J.A. Wilkes. We will use the defendant's spelling of his name.

2. The plaintiff identified this defendant as C.O. Rothsburn. The defendant, however, indicates that his last name is Rathburn. We will use the defendant's spelling of his name.

3. At various points in the complaint, the plaintiff alleges that the events at issue occurred in 2009. However, at other points the plaintiff alleges that the events at issue occurred in 2008.

Kale refused to commit the plaintiff to a mental health unit for legitimate treatment.

Defendant Kale gave the go ahead for the plaintiff to be stripped naked and kept in shackles and handcuffs for four days straight from May 9th to May 13th. Defendant Bleich coordinated the efforts for the plaintiff to be kept naked in a cell in handcuffs and leg irons for those days. Defendants Musial conspired with defendants Bleich, Bath, Corbett, Rathburn and Wilkes to leave the plaintiff naked in a cold cell with no linens for those days.

While the plaintiff was so confined, defendants Bleich and Musial harassed the plaintiff, and, after the plaintiff protested their homosexual advances, defendants Bleich and Musial make the leg irons tighter. Defendants Musial, Wilkes, Rathburn, Bath and Corbett taunted the plaintiff and made homosexual comments about him.

Defendant Wilkes commented that he was eating the plaintiff's peanut butter cookies, and when the plaintiff was

transferred his peanut butter cookies were gone.  Defendant Bath threw the plaintiff's food loaves on the floor several times and said "eat like a dog nigger."

Defendants Nurses Doe 1 and 2 also taunted and harassed the plaintiff.  One of the nurses, refused to afford the plaintiff medical attention after the plaintiff told him that he was suffering from hypothermia and that he felt like he was having a heart attack.

Defendant Bleich refused to reprimand his subordinate officers after learning that they were harassing and taunting the plaintiff.  Defendant Bleich also covered up the theft of the plaintiff's commissary items by his staff.  Defendants Captain Does 1-4 seen the plaintiff in the cell being tortured but refused to correct the situation saying that it was authorized treatment from the psychiatric staff.

Defendant Klopotoski was aware of the abuse being done to the plaintiff but did nothing to stop it.  Defendant

4

Klopotoski permitted and cosigned for the plaintiff to be held in a cell naked and in restraints.

Defendant Lucas neglected to file the plaintiff's grievances and refused to process his grievances.

The plaintiff is seeking compensatory and punitive damages as well as declaratory relief.

On March 30, 2010, defendants Bleich, Musial, Bath, Wilkes, Corbett, Rathburn, Klopotoski and Lucas filed a motion for partial dismissal of the complaint and a brief in support of that motion.[4] The plaintiff did not file a brief in opposition to the motion to dismiss as required by Local Rule 7.6, Rules of Court, M.D. Pa.

By an Order dated May 3, 2010, the plaintiff was ordered to file, on or before May 20, 2010, a brief in

---

4. Although titled as a motion to dismiss the complaint, the motion seeks dismissal of only certain claims in the complaint against the moving defendants.

opposition to the motion to dismiss. On May 24, 2010, the plaintiff filed a document in which he stated that he had not received a copy of the defendants' motion to dismiss and in which he requested an extension of time to respond to the motion. By an Order dated May 26, 2010, we ordered the Clerk of Court to send a copy of the defendants' motion and supporting brief to the plaintiff and we granted the plaintiff an extension of time, until July 23, 2010, to file a brief in opposition to the motion to dismiss.

The plaintiff still did not file a brief in opposition to the motion to dismiss. By an Order dated August 26, 2010, we granted the plaintiff another opportunity to file a brief in opposition to the defendants' motion to dismiss. The plaintiff was ordered to file a brief in opposition on or before September 9, 2010. We stated in that Order that if the plaintiff were to fail to file a brief in opposition within this time, he would be deemed to have abandoned this lawsuit and it would be recommended that this action be dismissed pursuant to Fed.R.Civ.P. 41(b).

The plaintiff still did not file a brief in opposition to the motion to dismiss. By a Report and Recommendation dated October 1, 2010, we recommended that the case be dismissed pursuant to Fed.R.Civ.P. 41(b). The plaintiff filed objections to that Report and Recommendation in which he asserted that due to his continued placement in solitary confinement he has been unable to respond to court orders. By an Order dated December 1, 2010, Judge Caldwell rejected the Report and Recommendation and remanded the case to the undersigned for further proceedings. Judge Caldwell determined that it was not appropriate to dismiss the case pursuant to Fed.R.Civ.P. 41(b) based merely on the plaintiff's failure to comply with the orders to file a brief in opposition. Rather, Judge Caldwell determined that before the case may be dismissed pursuant to Fed.R.Civ.P. 41(b) all of the factors set forth in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984) must be analyzed.

Upon remand, we again ordered the plaintiff to file a brief in opposition to the pending motion to dismiss. The

plaintiff was ordered to file a brief in opposition on or before January 7, 2011. The order again stated that, if the plaintiff were to fail to file a brief in opposition, he would be deemed to have abandoned this lawsuit and it would be recommended that this action be dismissed pursuant to Fed.R.Civ.P. 41(b).

The plaintiff still has not filed a brief in opposition to the motion to dismiss. Given Judge Caldwell's Order of December 1, 2010, we will nevertheless address the motion on the merits.

II. Motion to Dismiss and Pleading Standards.

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint. In deciding a motion to dismiss the complaint, we must accept all well-pleaded factual allegations as true, "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *McTernan*

8

*v. City of York,* 564 F.3d 636, 646 (3d Cir. 2009)(quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). The statement required by Rule 8(a)(2) need only give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, more is required than labels, conclusions and a formulaic recitation of the elements of a cause of action. *Id.* "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009). "A complaint has to "show" such an entitlement with its facts." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft, supra,* 129 S.Ct. at 1950. "When there

9

are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft, supra,* 129 S.Ct. at 1949 (quoting *Twombly*, *supra,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Some claims will demand relatively more factual detail to satisfy this standard, while others require less." *In re Insurance Brokerage Antitrust Litigation,* 618 F.3d 300, 320 n.18 (3d Cir. 2010).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be

held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

III. Discussion.

Defendants Bleich, Musial, Bath, Wilkes, Corbett, Rathburn, Klopotoski and Lucas contend that the plaintiff's claims for money damages against them in their official capacities should be dismissed because such claims are barred by the Eleventh Amendment. We agree.

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Although its text appears to restrict only the Article III diversity jurisdiction of the federal courts, the Eleventh Amendment has been interpreted "to stand not so much for what it says, but for the presupposition . . . which it confirms."

11

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)(quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991)). That presupposition is that each state is a sovereign entity in our federal system and that it is inherent in the nature of sovereignty that a sovereign is not amenable to suit unless it consents. *Id.* Thus, "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000).

In the absence of consent, a suit in federal court against the state or one of its agencies is barred by the Eleventh Amendment. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)(per curiam). However, a state may waive its Eleventh Amendment immunity by consenting to suit and Congress may abrogate States' Eleventh Amendment immunity when it unequivocally intends to do so and it acts pursuant to a valid grant of constitutional authority. *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670 (1999).

The Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity, *see* 42 P.C.S.A. § 8521(b), and 42 U.S.C. § 1983 does not override a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332 (1979).

Claims against state officials in their official capacities for damages are treated as suits against the state and are also barred by the Eleventh Amendment. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984).

Accordingly, it will be recommended that the claims for monetary damages against defendants Bleich, Musial, Bath, Wilkes, Corbett, Rathburn, Klopotoski and Lucas in their official capacities be dismissed because such claims are barred by the Eleventh Amendment.[5]

---

5. Claims against the defendants for monetary damages in their individual capacities are not barred by the Eleventh Amendment.

13

The moving defendants contend that the complaint fails to state a claim upon which relief can be granted against them based on verbal harassment. We agree.

Mere words spoken to a prisoner by a correctional officer, even when those words are harsh, do not amount to a violation of the prisoner's civil rights by the officer. *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979)(verbal harassment by threatening to hang an inmate is not sufficient to state a constitutional deprivation under §1983). Further, "[t]he use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution." *Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *Id.*

14

Accordingly, it will be recommended that the claims against the defendants based on taunts, verbal abuse and racial slurs be dismissed.[6]

Defendants Musial, Bleich, Bath, Corbett, Wilkes and Rathburn contend that the conspiracy claim in the complaint should be dismissed because the plaintiff's allegation of conspiracy is conclusory. We agree.

"The essence of a conspiracy is an agreement." *United States v. Kelly,* 892 F.2d 255, 258 (3d Cir. 1989). To state a conspiracy claim under 42 U.S.C. § 1983 upon which relief can be granted, a plaintiff must allege "facts from which a conspiratorial agreement can be inferred." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 178 (3d Cir. 2010). "To properly plead such an agreement, 'a bare assertion of conspiracy will not suffice.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

---

6. Although verbal statements do not support an independent claim upon which relief can be granted, the statements allegedly made by the defendants may nevertheless be relevant to the plaintiff's Eighth Amendment claims against the defendants.

15

The plaintiff alleges that defendants Musial conspired with defendants Bleich, Bath, Corbett, Rathburn and Wilkes to leave the plaintiff naked in a cold cell with no linens for days. The plaintiff, however, has not alleged facts from which an agreement can be inferred. Accordingly, the complaint fails to state a conspiracy claim against defendants Musial, Bleich, Bath, Corbett, Wilkes and Rathburn upon which relief can be granted.[7]

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008). The court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Id.*

---

[7]. Although the complaint fails to state a conspiracy claim upon which relief can be granted, it is a reasonable inference from the allegations of the complaint that the moving defendants were aware of the conditions under which the plaintiff was being held. Those conditions may support an Eighth Amendment claim. The defendants have not moved to dismiss the Eighth Amendment claim.

It would be futile to allow the plaintiff to file an amended complaint seeking monetary damages against the defendants in their official capacities or containing a claim based on verbal harassment. However, we can not say that amendment would be inequitable or futile regarding the conspiracy claim. Thus, we will recommend that the plaintiff be granted leave to file an amended complaint. Any amended complaint shall be complete in all respects. It shall contain all of the plaintiff's claims against all of the defendants. It shall be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed. It shall not incorporate by reference any of the previous complaint. Any amended complaint shall be titled as an amended complaint and shall contain the docket number of this case.

IV. Recommendations.

Based on the foregoing, it is recommended that the motion (doc. 14) for partial dismissal of the complaint filed by defendants Bleich, Musial, Bath, Wilkes, Corbett, Rathburn,

17

Klopotoski and Lucas be granted. It is recommended that the claims against the defendants in their official capacities for monetary damages be dismissed, that the claims against the defendants based on verbal harassment be dismissed and that the conspiracy claim against defendants Musial, Bleich, Bath, Corbett, Wilkes and Rathburn be dismissed. It is further recommended that the plaintiff be granted leave to file an amended complaint and that the case be remanded to the undersigned for further proceedings.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated: February 15, 2011.