UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| RALPH W. MCCLAIN, JR., | : | **CIVIL NO. 1:10-CV-00035** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| DR. KALE, *et al.*, | : | |
| | : | |
| Defendants | : | |


## REPORT AND RECOMMENDATION


The issue in connection with the pending summary judgment motions is whether the plaintiff exhausted available administrative remedies.  We recommend that summary judgment be granted as to one claim.  But, we recommend that the summary judgment motions otherwise be denied.


I. Background and Procedural History.


The plaintiff, a prisoner proceeding *pro se*, commenced this 42 U.S.C. § 1983 action by filing a complaint on January 7, 2010.

The complaint names Dr. Kale, a psychiatrist, as a defendant as well as the following officers and officials at the State Correctional Institution at Dallas: Lieutenant Bleich, Sergeant Musial, Captain Does 1-4, Nurse Doe 1, Corrections Officer Bath, Corrections Officer Wilkes, Corrections Officer Rathburn, Corrections Officer Corbett, Nurse Doe 2, Superintendent Klopotoski, and Grievance Coordinator Lucas.  The plaintiff alleges the following in his complaint.

Defendant Kale ordered the nursing and correctional staff to inject the plaintiff with psychotropic drugs against his will and without a court order.  Defendants Nurses Doe 1 and 2 injected the plaintiff with psychotropic drugs against his wishes on May 7th and May 8th of either 2008 or 2009.[1]

---

1. At various points in the complaint, the plaintiff alleges that the events at issue occurred in 2009.  However, at other points the plaintiff alleges that the events at issue occurred in 2008.

Despite having the plaintiff restrained several times, having the plaintiff injected with psychotropic drugs, and stating that the plaintiff is a danger to himself, defendant Kale refused to commit the plaintiff to a mental health unit for legitimate treatment.

Defendant Kale gave the go ahead for the plaintiff to be stripped naked and kept in shackles and handcuffs for four days straight from May 9th to May 13th.  Defendant Bleich coordinated the efforts to keep the plaintiff naked in a cell in handcuffs and leg irons for those days.  Defendants Musial, Bleich, Bath, Corbett, Rathburn, and Wilkes conspired to leave the plaintiff naked in a cold cell with no linens for those days.

While the plaintiff was so confined, defendants Bleich and Musial harassed the plaintiff, and after the plaintiff protested their homosexual advances, defendants Bleich and Musial made the leg irons tighter.  Defendants Musial, Wilkes, Rathburn, Bath, and Corbett taunted the plaintiff and made homosexual comments about him.

3

Defendant Wilkes commented that he was eating the plaintiff's peanut butter cookies.  When the plaintiff was transferred, his peanut butter cookies were gone.  Defendant Bath threw the plaintiff's food loaves on the floor several times and said "eat like a dog nigger."

Defendants Nurses Doe 1 and 2 also taunted and harassed the plaintiff.  One of the nurses refused to afford the plaintiff medical attention after the plaintiff told him that he was suffering from hypothermia and that he felt like he was having a heart attack.

Defendant Bleich refused to reprimand his subordinate officers after learning that they were harassing and taunting the plaintiff.  Defendant Bleich also covered up the theft of the plaintiff's commissary items by his staff.  Defendants Captain Does 1-4 saw the plaintiff being tortured, but they refused to take steps to correct the situation.  They said that the plaintiff was receiving treatment that had been authorized by the psychiatric staff.

Defendant Klopotoski was aware of abuse of the plaintiff but did nothing to stop it.  He acceded to the plaintiff being held in a cell naked and in restraints.

Defendant Lucas has negligently or intentionally impeded the processing of the plaintiff's grievances.

The plaintiff is seeking compensatory and punitive damages as well as declaratory relief.

The court has dismissed the claims against the defendants in their official capacities for monetary damages, the conspiracy claims, the claims based on verbal harassment, and the claims against defendants Captain Does 1 through 4 and Nurse Does 1 and 2.  The remaining defendants have filed answers to the complaint.

Defendants Bleich, Musial, Bath, Wilkes, Corbett, Rathburn, Klopotoski, and Lucas (corrections defendants) filed a motion for summary judgment, a statement of material facts, a brief, and supporting documents.  They contend that the

5

plaintiff failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a), and they present evidence to support that contention.  Defendant Kale later filed a motion for summary judgment, a statement of material facts, a brief and supporting documents.  He also contends that the plaintiff failed to exhaust administrative remedies.

The plaintiff filed a brief in opposition to the corrections defendants' motion for summary judgment and a response to their statement of material facts.  He contends that he was prevented from exhausting administrative remedies because his grievances were not filed and processed.  But he did not provide evidence to support that contention.

The corrections defendants filed a reply brief in support of their motion.  Later, the plaintiff filed a motion seeking leave to file a sur reply brief, and along with that motion he filed a sur reply brief and his own declaration.  We granted the plaintiff's motion for leave to file a sur reply brief.  We also provided the corrections defendants with leave

to file a supplemental reply brief, and they filed such a
brief.


II. Summary Judgment Standard.


    "'Summary judgment is proper if there is no genuine
issue of material fact and if, viewing the facts in the light
most favorable to the non-moving party, the moving party is
entitled to judgment as a matter of law.'" *The Circle School
v. Pappert*, 381 F.3d 172, 177 (3d Cir. 2004)(quoting *Pi Lambda
Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 441
n.3 (3d Cir. 2000)).


III. Discussion.


    The defendants contend that they are entitled to
summary judgment because the plaintiff failed to exhaust
available administrative remedies.

42 U.S.C. § 1997e(a), provides:

No action shall be brought with respect
to prison conditions under section 1983 of
this title, or any other Federal law, by a
prisoner confined in any jail, prison, or
other correctional facility until such
administrative remedies as are available are
exhausted.

In accordance with § 1997e(a), the exhaustion of available administrative remedies is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). A prisoner must "exhaust all available administrative remedies" regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. *Nyhuis v. Reno*, 204 F.3d 65, 75 (3d Cir. 2000). Failure to exhaust available administrative remedies is an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216 (2007). As an affirmative defense, the failure to exhaust available administrative remedies must be pleaded and proven by the defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

The Pennsylvania Department of Corrections has implemented an official Inmate Grievance System. The

8

grievance system is governed by Administrative Directive 804

(DC-ADM 804).   DC-ADM 804 sets forth a three-tier

administrative remedy system: (1) an inmate must present his

grievance to the Facility Grievance Coordinator for initial

review; (2) the inmate must appeal an adverse determination by

the Facility Grievance Coordinator to the Facility Manager;

and (3) from there, the inmate must appeal to the Secretary's

Office of Inmate Grievances and Appeals.

42 U.S.C. § 1997e(a) requires proper exhaustion.

*Woodford v. Ngo,* 548 U.S. 81 (2006).   In other words,

§ 1997e(a) requires more than simple exhaustion; i.e., more

than that there is no further process available to the inmate

within the grievance system. *Spruill v. Gillis*, 372 F.3d 218,

227-31 (3d Cir. 2004).   Section 1997e(a) requires that an

inmate follow the procedural requirements set forth in the

administrative remedy process that is available to him. *Id. at

231.*  The prison grievance procedures supply the yardstick for

measuring whether exhaustion was proper. *Id. See also Jones v.

Bock,* 549 U.S. 199, 218 (2007)("The level of detail necessary

in a grievance to comply with the grievance procedures will

vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

A. Claim Against Defendant Wilkes re Cookies.

The corrections defendants assert that the plaintiff filed a grievance alleging that cookies were missing from his property.  But, they assert, he did not name defendant Wilkes in that grievance and he did not appeal the denial of that grievance to final review.  Thus, they assert, the plaintiff has procedurally defaulted his claim against defendant Wilkes for allegedly eating his cookies.

DC-ADM 804 requires the inmate to identify any persons who may have information that could be helpful in resolving the grievance. DC-ADM 804, Part VI.A.7. *See also Spruill*, *supra,* 372 F.3d at 234 (holding that DC-ADM 804 made it mandatory for an inmate to include in his grievance the facts relevant to his claim, that the identity of a defendant is a

10

fact relevant to an inmate's claim, and that therefore it was mandatory for an inmate to include the identity of the defendant in his grievance).[2]  Despite the failure of the inmate in *Spruill* to include a particular defendant by name in the grievance, the court held that the plaintiff had exhausted his remedies because the prison grievance officer's recognition that the particular defendant was "involved in the events that [the plaintiff] complained of excused any procedural defects in [the plaintiff's] initial grievances." *Id*.

In this case, the plaintiff has failed to name defendant Wilkes in his prison grievance, and there was not a

---

2.  *Spruill* analyzed a prior version of DC-ADM 804.  The prior version of DC-ADM 804 provided, in pertinent part: "The inmate shall include a statement of the facts relevant to the claim. . . . The inmate should identify any persons who may have information that could be helpful in resolving the grievance." *Spruill*, *supra,* 372 F.3d at 234.  The version of DC-ADM 804 in effect in 2008 when the plaintiff filed his grievance provided, in pertinent part: "The inmate will include a statement of the facts relevant to the claim. . . . The inmate will identify any person(s) who may have information that could be helpful in resolving the grievance." DC-ADM 804, Part VI.A.7.  To the extent that there is any material difference between these versions, the 2008 version more clearly requires the inmate to identify any persons who may have information that may be helpful in resolving the grievance.

basis on which the grievance officer would have recognized
that defendant Wilkes was involved in the subject events.
Accordingly, the plaintiff procedurally defaulted his claim
against defendant Wilkes for allegedly eating his cookies.


    B. Claim Against Defendant Bleich re Coverup of Theft.


    The corrections defendants assert that, although the
plaintiff filed a grievance concerning missing hygiene items
and although that grievance ostensibly relates to his present
claim that defendant Bleich covered up a theft of his
commissary items, the plaintiff procedurally defaulted his
claim against defendant Bleich for allegedly covering up the
theft because the grievance did not specifically mention
defendant Bleich.


    The plaintiff correctly argues that his procedural
default was excused because of defendant Bleich's involvement
in the grievance response.  The prison assigned defendant

Bleich to investigate the grievance and defendant Bleich
responded to the grievance by stating that the items that the
plaintiff claimed to be missing are in fact in his shower bag.
The Superintendent responded to the plaintiff's grievance
appeal by stating that defendant Bleich checked the
plaintiff's shower bag and found the items there.  The
plaintiff's final administrative appeal asserts that defendant
Bleich lied about checking his bag and lied about the items
being in the bag.  The plaintiff's failure to name defendant
Bleich in his grievance was excused by the prison's
recognition of defendant Bleich's involvement. *See Spruill,
supra,* 372 F.3d at 234 (holding that prison can excuse an
inmate's procedural default); *Williams v. Beard*, 482 F.3d 637,
639-40 (3d Cir. 2007)(holding that prison officer who was
identified as the grievance officer and who had a conversation
with the plaintiff regarding a cell change was fairly within
the compass of the prisoner's grievance, and, thus, the
prisoner's procedural default in not naming the officer in the
grievance was excused).  Accordingly, defendant Bleich is not
entitled to summary judgment on the basis that the plaintiff
procedurally defaulted in the administrative process his claim

regarding the coverup of the theft of the plaintiff's commissary items.

C. Other Claims.

The defendants assert that the plaintiff failed to timely file grievances regarding any of his other claims.  The plaintiff, however, contends that he was prevented from exhausting administrative remedies because his grievances were not filed and processed.

In his declaration, the plaintiff provides evidence to support an inference that he was prevented from exhausting administrative remedies regarding his confinement in May of 2008 because his grievances were not filed and processed.  On the other hand, the defendants have presented evidence that the plaintiff was not prevented from exhausting his administrative remedies.  The evidence presented by the

14

parties creates a genuine factual dispute as to the material issue of fact whether the plaintiff was prevented from exhausting his administrative remedies.

The defendants contend that the plaintiff's contention that he was prevented from exhausting his administrative remedies is not supported by any evidence other than his self-serving declaration.

A party opposing a summary judgment motion must set forth specific facts that reveal a genuine issue of material fact, and "conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Kirleis v. Dickie, McCamey & Chilcote,* 560 F.3d 156, 161 (3d Cir. 2009).

Although the plaintiff's affidavit is self-serving in that it supports his position, it is not conclusory.  The plaintiff states in his declaration that, on May 20, 2008, after being transferred from SCI-Dallas to SCI-Cresson, he

15

mailed grievances to SCI-Dallas regarding his confinement from May 8, 2008 to May 13, 2008. *Doc. 70* at ¶13.  He states that defendant Lucas did not file the five grievances that he submitted. *Id.* at ¶¶13 & 20.  He further states that, after defendant Lucas asserted that she had not received the grievances, he resent them and that she still refused to file them. *Id.* at ¶21.  Given the specific statements in the plaintiff's declaration, the declaration is not the type of conclusory, self-serving declaration that is insufficient to preclude summary judgment.

    The defendants also suggest that the plaintiff's declaration is inconsistent with his deposition testimony. They refer to the following exchange during the plaintiff's deposition:

        Q. Okay.  Do you remember filing any
        grievances about the allegations that are in
        the complaint?
        A.  When I was at SCI Dallas, I don't remember
        filing any grievances.  I don't remember
        receiving any grievance while at SCI Dallas.
        After I left SCI Dallas, then I did.

16

Q. Okay.  But were they grievances about what happened to you when you were for four days?
A.  I don't remember.

*Doc. 54-5 at 6.*


"When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists." *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir. 1991). "When a party does not explain the contradiction between the subsequent affidavit and the prior deposition, the alleged factual issue in dispute can be perceived as a "sham," thereby not creating an impediment to a grant of summary judgment based on the deposition." *Baer v. Chase,* 392 F.3d 609, 624 (3d Cir. 2004).  "[T]he objectives of summary judgment would be seriously impaired if the district court were not free to disregard the conflicting affidavit." *Hackman, supra,* 932 F.2d at 241 (quoting *Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703, 706 (3d Cir. 1988)).  But not all contradictory affidavits are shams. *Jiminez v. All American Rathskeller,*

*Inc.*, 503 F.3d 247, 254 (3d Cir. 2007). "Instead, . . . 'when there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit.'" *Id.* (quoting *Baer, supra,* 392 F.3d at 625). "Such corroborating evidence may establish that the affiant was 'understandably' mistaken, confused, or not in possession of all the facts during the previous deposition." *Id.*

In this case, the deposition testimony is uncertain. We assume that the last question asked by defense counsel was meant to deal with the time during which the plaintiff was confined in the cell for four days in May of 2008. But there is something missing from the question. It is not in and itself a clear and complete question. Moreover, there is other evidence in the record to corroborate the plaintiff's declaration: there are copies of the grievances that the plaintiff allegedly sent, *see Doc. 75-2* at 2-7. Thus, we will consider the plaintiff's declaration notwithstanding his deposition testimony.

18

Based on the plaintiff's declaration, we cannot say as a matter of law that the administrative remedy process was available to the plaintiff with respect to his claims regarding his confinement in May of 2008.  Accordingly, we will recommend that the defendants' motions for summary judgment be denied as to those claims.

D. Discovery Issues.

The plaintiff asserts that the corrections defendants have failed to respond to his discovery requests and that he needs discovery to properly respond to the summary judgment motion.  The correction defendants assert that they have responded to the plaintiff's discovery requests.  Because we will recommend that the summary judgment motions be denied except as to the claim against defendant Wilkes for eating the plaintiff's cookies and because the plaintiff has presented no basis to reasonably infer that any of his purported

19

outstanding discovery would have any effect on that claim against defendant Wilkes, we need not address the discovery issue at this point.  In accordance with the amended case management order, the deadline for filing discovery-related motions is July 5, 2012.  If the plaintiff thinks that the defendants still owe him discovery responses, he should file a motion to compel discovery and a brief in support of that motion.

IV. Recommendations.

Based on the foregoing, it is recommended that the defendants' motions (docs. 53 & 63) for summary judgment be denied except as to the claim that defendant Wilkes ate the plaintiff's cookies.  Because the discovery deadline and the deadline for filing dispositive motions has not passed, we

also recommend that the case be remanded to the undersigned

for further proceedings.


                                        _*/s/ J. Andrew Smyser*_
                                        J. Andrew Smyser
                                        Magistrate Judge



Dated:  April 23, 2012.