**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RALPH W. MCCLAIN, SR.,** | : | **Civil No. 1:10-CV-35** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **( Judge Caldwell)** |
| | : | |
| **DR. KALE, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.      Statement of Facts and of The Case

#### A.      Introduction and Procedural History

This is a *pro se* civil rights case that was first brought by a state prisoner, Ralph McClain, through the filing of a civil rights complaint on January 7, 2010.  (Doc. 1.) Over the past three and one half years, through the process of litigation, the issues and parties in this lawsuit have been narrowed significantly.

We are now engaged in this next step of this process, as we are tasked to consider a motion for summary judgment, (Doc. 95.), filed by the remaining corrections defendants in this case,[1] which seeks dismissal of McClain's Eighth

---

[1]These corrections defendants are Correctional Officers Bath, Corbett, Rothsburn, and Wilk, Lt. Bleich, Sgt. Muscial, Michael Klopotoski and Robin

Amendment deliberate indifference claims that relate to an episode in May 2008 during which McClain was held in restraints while experiencing some violent anti-social behavior during a medically-ordered psychiatric observation at the prison.

For their part, in January 2013 the defendants thoroughly documented this motion, providing the Court with full briefing, along with a comprehensive statement of facts which is amply supported and documented by evidence in the record. (Docs. 95, 105-108.) McClain was then directed to respond to this motion by February 2013, but neglected to do so. Instead, McClain waited some five months, until May 2013, before filing a response to this motion. (Doc. 95.) McClain's tardy response in opposition to this motion (Doc. 109.), is sparse, cryptic, document, which displays a casual indifference to this lawsuit, and seemingly abandons this case since McClain states: "I hate to ramble, Your Honor; but, be it what the case is with my status as a pro se in forma pauperis, I am asking that you to [sic] permit me to abandone [sic] this case until the later date where I am better situated to manage the case financially by way of hired counsel and/or as a less confined and constrined [sic] pro se prisoner litigant." (Id., p.7.) Thus, McClain has provided no substantive response to this motion, choosing instead to announce that he wishes to abandon the case.

---

Lucas.

Because this litigation has been pending for three and one half years, it is recommended that we decline this invitation, stated in McClain's belated response to this motion, and in a subsequent motion to stay, (Doc. 111.), to continue this litigation indefinitely. Instead, for the reasons set forth below, it is recommended that this motion be granted, and these claims be dismissed.

## B. Factual Background

With respect to this Eighth Amendment claim, the plaintiff's allegations and the pertinent facts can be simply stated:[2]

### 1. McClain's Allegations

In his complaint, McClain alleged that from May 8, 2009, to May 13, 2009, while at SCI-Dallas, at the coordination of Lt. Bleich and upon the order of non-Corrections Defendant Dr. Kale, he was kept in a cell naked, in handcuffs and leg

---

[2]This factual recital is largely derived from the defendants' statement of material facts in support of their summary judgment motion. (Doc. 105.) McClain has not contested or disputed these facts in any fashion. (Doc. 109.) Therefore, pursuant to Local Rule 56.1 the statement of facts shall be deemed uncontested for purposes of adjudicating this motion. See Sanders v. Beard, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Doe v. Winter, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007); Thomas v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

irons. (Doc. 1, ¶¶ 3, 4.) Later in the Complaint, McClain clarified that the dates of his alleged confinement were May 9, 200*8* to May 13, 200*8*. (Id., ¶¶ 8, 15.) While confined and restrained McClain alleged that he was "homosexually harassed," and Lt. Bleich did not reprimand subordinate officers when he learned that they were harassing McClain; (Id., ¶ 7) and further avers that when he resisted these homosexual advances, Corrections Defendants Bleich and Muscial made the leg irons tighter. (Id., ¶ 6.) McClain also contended that Corrections Defendant Bath threw his food loaves on the floor; that Corrections Defendant Bleich covered up the theft of McClain's commissary by staff; that then-Superintendent Klopotoski was aware of the alleged abuse and did not do anything, even after McClain informed him of the alleged abuse, and that Klopotoski "permitted and co-signed for [him] to be tortured in a cell naked and in mechanical restraints for four days." (Id., ¶¶ ¶¶ 17-20.) Finally, McClain alleged that defendant Lucas refused to process his grievances. (Id., ¶¶ 21-22.)

## 2.    McClain's Mental Health and Correctional History

With respect to these allegations, it is undisputed that McClain's claims are made against the backdrop of a profound mental health and institutional misconduct history for the plaintiff, a history marked by violent, destructive and self-destructive behavior by McClain over the years. Thus, it is clear that McClain has been

diagnosed as suffering from mental illness and has been assessed as having antisocial personality disorder and deliberate, destructive behavior. (Doc., 105, ¶16, Progress Note for May 7, 2008, attached in the Appendix as part of Exhibit "A-1," p. 13.) Furthermore, since he has been incarcerated in Department custody, McClain has been a highly disruptive inmate and has received over four hundred (400) misconduct citations. (Id., ¶17 Declaration of Robin M. Lewis, attached in the Appendix as Exhibit "B," ¶ 7.) Moreover, those who have examined and treated McClain have found that he demonstrates poor impulse control and demanding behavior such that if he does not "get his way" he becomes "aggressive, demanding and is liable to become destructive or assaultive." (Id.,¶18, Exhibit "A-1," p. 13.)

### 3. McClain's Mental Health Care and Treatment, May 8, 2008

It is against this background that McClain received the care, treatment and confinement that is at issue in this lawsuit. This particular episode began on May 6, 2008, when Dr. Bohinski admitted McClain to a Psychiatric Observation Cell (POC), or dry cell, for a starvation attempt. (Id., ¶ 19.) On this occasion McClain refused to come to his cell door to be handcuffed to be escorted to the psychiatric observation cell and received a misconduct for refusing to obey an order. (Id., ¶20, Misconduct

A758560, attached in the Appendix as Exhibit "B-2.") McClain later refused to attend the misconduct hearing and was found guilty of this infraction. (<u>Id</u>.)

Although McClain was initially admitted pursuant to the prison's inmate starvation protocol, he ate within 24 hours, but he refused to allow Dr. Bohinski to examine him so that he could be returned to population. (Id., ¶21, Exhibit "A-1," pp. 35-36.) McClain then began exhibiting other forms of erratic behavior, first becoming angry that Dr. Bohinski would not discharge him, and then later agreeing to be examined and medically cleared. (<u>Id.</u>)

This erratic and destructive behavior escalated on May 7, 2008, when McClain received a misconduct for threatening an employee or their family with bodily harm, refusing to obey an order, and possession of contraband, *i.e.*, a piece of glass. During this violent episode, McClain repeatedly kicked the window on the door of the psychiatric observation cell and refused orders to stop doing so. (<u>Id.</u>, ¶22 Misconduct A894770, attached in the Appendix as Exhibit "B-3.") McClain also voiced murderous thoughts, and threatened to kill anyone who came in for him with a piece of the glass from the window. (<u>Id.</u>, ¶23.) McClain's disturbing conduct went beyond mere words; McClain also became physically aggressive and threw broken glass at staff. A cell extraction team was ultimately called to subdue McClain, and

while he was verbally aggressive prior to the team's arrival, he was subsequently compliant with their orders. (Id., ¶24, Exhibit "A-1," p. 18.)

As a result of this incident, McClain was assessed as displaying a "high potential for injury to self or others." (Id., ¶25.) Accordingly, Dr. Kale ordered that McClain be placed in four-point restraints and constantly watched. (Id.,¶26, Physician's Order Form, May 7, 2008, attached in the Appendix as part of Exhibit A-1," p. 1.) McClain was also administered Haldol® and Ativan® to address his highly agitated state. (Id., ¶27 Exhibit "A-1," p. 20.)

Correctional staff then began to monitor McClain in accordance with Department of Corrections Policy governing the application of psychiatric restraints, which are used to subdue, limit, restrict, or control an inmate's movements due to psychiatric or organic medical causes or conditions. Under this policy, such restraints are to be used to prevent injury or restrict interference with the delivery of vital medical care involving an inmate affected by a psychiatric disorder, disorientation, or confusion. (Id., ¶29, Declaration of Myron Stanishefski, attached in the Appendix as Exhibit "E," ¶ 6. ) Department Policy requires medical staff to document that status of an inmate in restraints on the inmate's medical chart every 15 minutes. (Id., ¶30.) During these 15 minute examinations, a nurse checks that the restraints are not constricting blood flow to the involved extremities by making circulation checks.

The check ensures that two fingers can be passed between the inmate's skin and the restraint and that there is opportunity to exercise the limbs. (Id., ¶32.) The Department of Corrections policy further provides that every finding, including inmate behavior, interventions, amount of food/fluid consumed, exercise, and the results of circulation checks are documented in the DC-472 (Progress Notes). (Id., ¶33.) Department Policy also requires that a Corrections Officer provide a constant watch of the inmate until the inmate is released from restraints. Every security check is documented on the Department form DC-483, and this form is maintained in the medical chart. (Id., ¶34.)

In this case, McClain's undisputed medical records reveal that staff complied with Policy, conducting medical examinations of McClain every 15 minutes. These examinations revealed no acute distress during these checks and no circulatory problems, such that the restraints were not too tight; the restraints were safely intact. (Id., ¶35, Appendix Exhibit "A-1.") Thus, Dr. Kale visited McClain on May 7, 2008, after he was placed in four-point restraints, and McClain was sedated. Following this examination, Dr. Kale ordered that the four-point restraints be continued and that McClain remain on constant watch. (Id., ¶37, Exhibit "A-1," p. 20.) Dr. Kale again saw McClain on May 7, 2008, at approximately 8:30 p.m., at which point McClain expressed that he believed smashing the glass was justified because Dr. Bohinski

would not release him to the Restricted Housing Unit. McClain was diagnosed at that time with polysubstance dependence, antisocial personality disorder, accompanied by deliberate and destructive behavior. (Id., ¶38.)

During the time he was confined in the four-point restraints, McClain was offered water, even eating bologna sandwiches and drinking milk at one point, and his urine production was monitored and documented. (Id., ¶40, Appendix Exhibit "A-1.") In accordance with Department Policy, a security check of McClain was done by Corrections Officers, who remained on constant watch, and the observations were documented on Department Form DC-483. His restraints were also released for exercise, as documented on the DC-483. (Id., ¶Appendix Exhibit "A-1," pp. 31-34.) For example, Corrections Officers Bath and Rathburn exercised McClain on May 7, 2008, at 7:30 p.m., and on May 8, 2008, Lt. Bleich and Corrections Officer Corbett, *inter alia*, were present to remove the restraints and exercise McClain at 7:45 a.m. (Id., ¶¶42-43, Appendix Exhibit "A-1," pp. 33-34.)

Having ordered that the four-point restraints be continued through the night, on May 8, 2008, at 10:30 a.m., Dr. Kale again examined McClain, who appeared calmer and stated that he regretted punching out the fourteen windows in the cell. McClain's appetite and energy were documented as good; he was off of his hunger strike; and he wanted to go back to the Restricted Housing Unit. Accordingly, Dr.

Kale discontinued the four-point restraints on May 8, 2008. (Id., ¶¶44-45.) Thus, contrary to McClain's allegations, he was not in four-point restraints for 4 days, from May 9, 2008 to May 13, 2008. Furthermore, there is no documentation in McClain's medical records for the relevant period of time that Defendant Klopotoski "co-signed" for McClain to be placed in the restraints, as alleged by McClain. Quite the contrary, the restraints were ordered by a psychiatrist. (Id., ¶¶46-47.)

## II. **Discussion**

### A. **Rule 56–The Legal Standard**

The defendants have moved for judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider

all evidence in the light most favorable to the party opposing the motion." <u>A.W. v. Jersey City Pub. Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." <u>Countryside Oil Co., Inc. v. Travelers Ins. Co.</u>, 928 F.Supp. 474, 482 (D.N.J.1995). This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment. With respect to such claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." <u>Shelton v. University of Medicine & Dentistry of N.J.</u>, 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing <u>Stelwagon Mfg. v. Tarmac Roofing Sys., Inc.</u>, 63 F.3d 1267, 1275, n.17 (3d Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. <u>See</u> <u>Buttice v. G.D. Searle & Co.</u>, 938 F.Supp. 561 (E.D.Mo.1996). Additionally, a party must respond to a hearsay

objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books,

_Ltd. v. Temple University_, 697 F.2d 90, 96 (3d Cir. 1982)." "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." _Lockhart v. Hoenstine_, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." _Gans v. Mundy_, 762 F.2d 338, 341 (3d Cir. 1985)(citing _Ness v. Marshall_, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. Under the Local Rules, the failure to follow these instructions and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the
> facts set forth in the movant's statement. This Local Rule serves several
> purposes. First, it is designed to aid the Court in its determination of

whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*." 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis). A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. <u>See</u> <u>Sanders v. Beard</u>, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); <u>Thomas v. Norris</u>, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## B.    <u>Constitutional Standards Governing Eighth Amendment Claims</u>

In conducting this legal analysis we must also be mindful of the constitutional standards which govern Eighth Amendment claims, since McClain advance an Eighth Amendment claim against the remaining defendants in his complaint, asserting that prison staff violated his Eighth Amendment rights by displaying deliberate indifference to his medical needs while he was briefly restrained on May 7-8, 2008.

This Eighth Amendment claim is, in turn, judged against settled legal principles, principles which set precise and exacting standards for asserting a constitutional infraction. All of the various claims, however, are governed by the same overarching and animating constitutional benchmarks. As the United States Court of Appeals for the Third Circuit has observed:

> The Eighth Amendment protects against infliction of "cruel and unusual punishment." However, "not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Id. (citation and internal quotations omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.

> Resolution of an Eighth Amendment claim therefore "mandate[s] an inquiry into a prison official's state of mind." Wilson v. Seiter, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Two considerations define that inquiry. We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. Id. at 298, 111 S.Ct. 2321. If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. Id. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain. "What is necessary to establish an 'unnecessary and wanton infliction of pain ...' varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

Fuentes v. Wagner, 206 F.3d 335, 344-45 (3d Cir. 2000).

With these tenets in mind we turn to a consideration of the individual Eighth Amendment claim advanced here by McClain.

### 1.    Deliberate Indifference Claims

In this case, McClain alleges that prison officials left him in physical restraints for an excessive period of time. Inmate Eighth Amendment claims involving the "prolonged use of restraints. . . [are] more properly analyzed under the [Eighth Amendment's] deliberate indifference standard. See A.M. ex. rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 587 (3d. Cir.2004) (deliberate indifference standard appropriate where it did not appear that officials 'were required to make split-second decisions to maintain or restore order through the use of excessive physical force'); Howard v. Bureau of Prisons, Civ. A. No. 3:05–CV–1372, 2008 WL 318387, at *13 (M.D.Pa. Feb.4, 2008) ('Outside the context of a prison disturbance, which is characterized as "a single instance of prisoner unrest where there is a need to act quickly," Eighth Amendment claims are judged by the deliberate indifference standard.'); Trammell v. Keane, 338 F.3d 155, 162–63 (2d Cir. 2003) (applying deliberate indifference standard in determining whether deprivation orders, depriving prisoner of certain amenities, were reasonably calculated to restore prison discipline

and security)." <u>Womack v. Smith</u>, 1:06-CV-2348, 2011 WL 819558 (M.D. Pa. Mar. 2, 2011).

Under this Eighth Amendment analytical paradigm, courts recognize that prison officials may not be deliberately indifference to harms or injuries suffered by inmates. In <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120 (3d Cir. 2001), the Court of Appeals explained the basic requirements of deliberate indifference claim brought against a prison official under the Eighth Amendment as follows:

> An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind."

<u>Id.</u> at 125 (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)). Furthermore, in cases involving prison safety or prison conditions, the relevant state of mind "is one of 'deliberate indifference' to inmate health or safety." <u>Id.</u> This deliberate indifference standard "is a subjective standard under <u>Farmer</u> – the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." <u>Id.</u> Thus, " '[d]eliberate indifference can be shown when a prison official *knows of and disregards* an excessive risk to inmate health or safety' <u>Hamilton v. Leavy</u>, 117 F.3d 742, 747 (3d Cir. 1997) (quotation marks omitted)(emphasis added).

Accordingly, "to survive summary judgment on an Eighth Amendment claim asserted

under 42 U.S.C. § 1983, a plaintiff is required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Davis v. Williams, 354 F. App'x 603, 605-606 (3d Cir. 2009).

As explained in Beers-Capitol, in Eighth Amendment cases based on allegations of deliberate indifference on the part of prison officials or other supervisory defendants, the Supreme Court has "rejected an objective test for deliberate indifference; instead it looked to what the prison official actually knew rather than what a reasonable official in his position would have known." Id. at 131. Specifically, the Supreme Court "held that 'a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.'" Id. (quoting Farmer, 511 U.S. at 837). This requirement of actual knowledge on the part of supervisory officials "means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer, 511 U.S. at 837).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional

violation under the Eighth Amendment occurs only when officials are deliberately indifferent to an inmate's serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  To establish a violation of his constitutional right to adequate medical care in accordance with this standard, an inmate is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain."  Estelle, 429 U.S. at 104.  Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an

inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g. Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; see, e.g., Ham v. Greer, 269 F. App'x 149 (3d Cir. 2008); James v. Dep't of Corrections, 230 F. App'x 195 (3d. Cir. 2007); Gillespie v. Hogan, 182 F. App'x 103 (3d Cir. 2006); Bronson v. White, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); Gindraw v. Dendler, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. James, 230 F. App'x. at 197-98 (citations omitted). In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

There is a necessary corollary to this principle, limiting the reach of the Eighth

Amendment in a prison medical setting. In a case such as this, where the inmate

received on-going medical care, it is also well-established that non-medical

correctional staff may not be "considered deliberately indifferent simply because they

failed to respond directly to the medical complaints of a prisoner who was already

being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d. Cir.

1993). The rationale for this rule has been aptly explained by the United States Court

of Appeals for the Third Circuit in the following terms:

> If a prisoner is under the care of medical experts . . . , a non-medical
> prison official will generally be justified in believing that the prisoner
> is in capable hands. This follows naturally from the division of labor
> within a prison. Inmate health and safety is promoted by dividing
> responsibility for various aspects of inmate life among guards,
> administrators, physicians, and so on. Holding a non-medical prison
> official liable in a case where a prisoner was under a physician's care
> would strain this division of labor. Moreover, under such a regime, non-
> medical officials could even have a perverse incentive *not* to delegate
> treatment responsibility to the very physicians most likely to be able to
> help prisoners, for fear of vicarious liability. Accordingly, we conclude
> that, absent a reason to believe (or actual knowledge) that prison doctors
> or their assistants are mistreating (or not treating) a prisoner, a non-
> medical prison official . . . will not be chargeable with the Eighth
> Amendment scienter requirement of deliberate indifference.

Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004).

Applying this standard, courts have repeatedly held that, absent some reason

to believe that prison medical staff are mistreating prisoners, non-medical corrections

staff who defer to physicians regarding inmate medical issues may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra; Garvey v. Martinez, No. 08-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); Hodge v. United States. No. 06-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007).

Furthermore, it is important to note that these constitutional protections are only triggered by excessive and prolonged confinement in restraints. Thus, courts have recognized that brief periods in restraints of twenty fours or less typically will not give rise to an Eighth Amendment deliberate indifference claim. See, e.g., Key v. McKinney, 176 F.3d 1083, 1086 (8th Cir.1999) (no Eighth Amendment violation where prisoner handcuffed and shackled for 24 hours); Hunter v. Bledsoe, No. 10-CV-927, 2010 WL 3154963 (M.D.Pa. Aug.9, 2010) (ambulatory restraints used for 24 hours); Holley v. Johnson, No. 08-CV-629, 2010 WL 2640328 (W.D.Va. June 30, 2010) (ambulatory restraints used for 48 hours); Zimmerman v. Schaeffer, 654 F.Supp.2d 226, 232 (M.D.Pa. 2009)(19 hours or more in restraint chair); Moore v. Miller, No. 7:08CV00614, 2009 WL 113258 (W.D.Va. Jan.15, 2009) (26 hours); Keyes v. O'Brien, No. Civ. A. 7:06CV00437, 2006 WL 2125912 (W.D.Va. July 27, 2006) (no Eighth Amendment violation where prisoner placed in ambulatory

restraints for 30 hours); <u>Garraway v. United States</u>, No. 04–CV–01049, 2006 WL 3054606, at *8 (D.Colo. July 24, 2006) (50 hours in ambulatory restraints); <u>Saleh v. Ray</u>, No. Civ. A. 02–3214, 2003 WL 23484639, at * 6 (D.Kan.2003) (24 hours in ambulatory restraints, no Eighth Amendment violation).

## C. **The Defendants Are Entitled to Summary Judgment**

### 1. **McClain's Deliberate Indifference Claims Fail**

Guided by these benchmarks, we conclude that the defendants are entitled to summary judgment in this case on McClain's Eighth Amendment deliberate indifference claims. McCullon cannot sustain a deliberate indifference claim based upon the fact that he was held in restraints for approximately twenty-four hours after his angry, violent and threatening outburst.

At the outset, the duration of this period of restraint–24 hours–simply does not implicate grave Eighth Amendment concerns. <u>See, e.g.</u>, <u>Key v. McKinney</u>, 176 F.3d 1083, 1086 (8th Cir.1999) (no Eighth Amendment violation where prisoner handcuffed and shackled for 24 hours); <u>Hunter v. Bledsoe</u>, No. 10-CV-927, 2010 WL 3154963 (M.D.Pa. Aug.9, 2010) (ambulatory restraints used for 24 hours); <u>Holley v. Johnson</u>, No. 08-CCV-629, 2010 WL 2640328 (W.D.Va. June 30, 2010) (ambulatory restraints used for 48 hours); <u>Zimmerman v. Schaeffer</u>, 654 F.Supp.2d 226, 232 (M.D.Pa. 2009)(19 hours or more in restraint chair); <u>Moore v. Miller</u>, No.

7:08CV00614, 2009 WL 113258 (W.D.Va. Jan.15, 2009) (26 hours); Keyes v. O'Brien, No. Civ. A. 7:06CV00437, 2006 WL 2125912 (W.D.Va. July 27, 2006) (no Eighth Amendment violation where prisoner placed in ambulatory restraints for 30 hours); Garraway v. United States, No. 04–CV–01049, 2006 WL 3054606, at *8 (D.Colo. July 24, 2006) (50 hours in ambulatory restraints); Saleh v. Ray, No. Civ. A. 02–3214, 2003 WL 23484639, at * 6 (D.Kan.2003) (24 hours in ambulatory restraints, no Eighth Amendment violation).

Moreover, the use of these restraints was both reasonable and necessary in light of McClain's violent behavior and agitated demeanor on May 7, 2008. Indeed, it is undisputed that staff used the restraints in a measured fashion, and in a manner which was directly linked to the penological goals of ensuring institutional safety, as illustrated by the fact that the restraints were removed shortly after McClain gained control of his emotions, and was able to present in a rational and non-threatening manner. Furthermore, the meticulous care and attention which McClain received from prison medical and correctional staff while in restraints belies any claim of deliberate indifference to his physical needs. In sum, the use of restraints here was in direct response to McClain's violent behavior. Those restraints were employed for a limited period of time, and were removed promptly once McClain exhibited behavior which indicated that he no longer presented a threat to himself, fellow

inmates, or staff. On these facts, a deliberate indifference claim fails, and the defendants are entitled to summary judgment in their favor.

Finally, we note that the use of these restraints was closely monitored by medical personnel throughout May 7-8, 2008, and those medical staff observed no medical reason to remove these restraints. Since it is axiomatic that correctional staff cannot be held deliberately indifferent when the defer to medical personnel on medical matters, Durmer v. O'Carroll, 991 F.2d 64, 69 (3d. Cir. 1993), this fact also compels summary judgment in favor of these remaining correctional defendants on this deliberate indifference claim.

### 2. **Qualified Immunity**

But even if McClain had stated a colorable constitutional claim relating to his hand-cuffing, the defendants would still be entitled to qualified immunity from these claims for damages. In order to establish a civil rights claim McClain must show the deprivation of a right secured by the United States Constitution or the laws of the United States. Satisfying these elements alone, however, does not guarantee that McClain is entitled to recover damages from these public officials. Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999);

see also Pearson v. Callahan, 555 U.S. 223 (2009). This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit." Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted). Qualified immunity:

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries. First, the court must evaluate whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). If the defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor. Saucier, 533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. Pearson, 555 U.S. at 232; Saucier, 533 U.S. at 201-

02. The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right.  <u>Williams</u>, 455 F.3d at 191 (citing <u>Saucier</u>, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." <u>Wilson</u>, 526 U.S. at 615.  The Supreme Court has explained that, at least in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." <u>Hope v. Pelzer</u>, 536 U.S. 730, 741 (2002) (quoting <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997) (internal quotation marks and citation omitted)).  In some cases, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." <u>Wilson</u>, 455 F.3d at 191 (quoting <u>Hope</u>, 536 U.S. at 741).

The court is no longer required to conduct these two inquiries sequentially, <u>Pearson</u>, 555 U.S. at 239-40, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted.  <u>Id.</u>  Where a court elects to address the alleged constitutional violations, however, the court's

analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).") Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

Applying these benchmarks, we find that the defendants are entitled to qualified immunity in this case. McClain's confinement in psychiatric restraints was directed by prison medical staff and the duration of McClain's detention in restraints fell well within the time frame which had previously and repeatedly been recognized as a discrete period of time which does not give rise to constitutional concerns. See, e.g., Key v. McKinney, 176 F.3d 1083, 1086 (8th Cir.1999) (no Eighth Amendment violation where prisoner handcuffed and shackled for 24 hours); Hunter v. Bledsoe, No. 10-CV-927, 2010 WL 3154963 (M.D.Pa. Aug.9, 2010) (ambulatory restraints

used for 24 hours); Holley v. Johnson, No. 08-CCV-629, 2010 WL 2640328 (W.D.Va. June 30, 2010) (ambulatory restraints used for 48 hours); Zimmerman v. Schaeffer, 654 F.Supp.2d 226, 232 (M.D.Pa. 2009)(19 hours or more in restraint chair). Therefore, these officials should be entitled to qualified immunity from damages in this case.[3]

---

[3]Further we note that the absence of any competent evidence suggesting that defendant Klopotoski played any active role in these events compels his dismissal from this action since to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice, none of which has been shown here with respect to defendant Klopotoski. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997). Likewise, McClain's claims against defendant Lucas, which relate solely to grievance processing, fail. Inmates do not have a constitutional right to a prison grievance system. See Speight v. Sims, 283 F. App'x 880 (3d. Cir. 2008) citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x. 924 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). See also Cole v. Sobina, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate: "Several named defendants, . . . were named only for their supervisory roles in the

## III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion for summary judgment (Doc. 95.) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

---

prison system.  *The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them.*  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* )."  Pressley v. Beard, 266 F. App'x 216, 218 (3d Cir. 2008)(emphasis added)..

Submitted this 7th day of August 2013.

**_S/Martin C. Carlson_**
Martin C. Carlson
United States Magistrate Judge